We'll hear argument next this morning in Case 24-482, Ellingburg v. United States. Ms. Zaharia? Mr. Chief Justice, and may it please the Court, The MVRA classifies restitution as criminal punishment and is thus subject to the Ex Post Facto Clause. Just like imprisonment and fines, restitution is part of an offender's criminal sentence, imposed at the end of a criminal proceeding as a consequence of conviction. The sentence is the punishment for the crime. Other features of the MVRA confirm this conclusion. Restitution is intertwined with other punishments and can be the only punishment for misdemeanors. Like fines, restitution is enforced with the threat of summary imprisonment. And the federal rules of criminal procedure and the chapters of Title 18 that govern sentencing apply. All of this is why, in a trio of cases, Paroline, Pasquantino, and Kelly, this Court called restitution a criminal punishment that serves punitive and penological purposes and a criminal sanction that furthers the government's interest in rehabilitation and punishment. Amicus responds that victim compensation is the primary purpose of restitution. But that purpose-based analysis overlooks the threshold classification question. Does the statute on its face impose criminal punishment? The answer here is yes. Criminal punishments may serve multiple purposes at the same time. Imprisonment punishes but also protects the public. The same is true of restitution. It punishes the offender and, if the offender pays, compensates the victim. Finally, this case presents the question presented. The MVRA is the law being applied to petitioner retroactively. The district court that denied the show-cause motion applied the MVRA, and the Eighth Circuit then affirmed on the ground that the MVRA imposes a civil remedy. The petition challenges that case dispositive holding. I welcome the Court's questions. Aren't we going to have to wrestle with the fact that petitioner was not originally sentenced under the MVRA? We don't think the Court needs to wrestle with that fact. And I'll start by saying it's not clear what statute the original sentencing of court applied 30 years ago. All we have is a judgment form. The judgment form simply imposes an amount of restitution, and there is one portion of the judgment form, Pet. App. 27A, that cites to Section 3663 in one paragraph, but the check box in front of that paragraph is not checked. So there's nothing in the judgment form that indicates whether the district court that sentenced Mr. Ellingberg applied the VWPA or the MVRA. Now, under the rationale of the decision below of the Eighth Circuit, the MVRA was the statute that governed the restitution order imposed at sentencing, because the Eighth Circuit held at the urging of the government in this case that the MVRA imposes only a civil remedy. As a result, under the effective date provision of the MVRA, it was in effect at the time of the sentencing, and it applied because there was no constitutional barrier to its application. That is the rationale that the government argued to the Eighth Circuit below. The Eighth Circuit accepted that argument. The government continued to argue that in its brief in opposition to our cert petition at page 3, where it again said that the MVRA was the statute that governed this restitution order. And isn't your key point that regardless, regardless of what happened 30 years ago, today your client is being held to the responsibilities of the MVRA? Absolutely, Your Honor. So, you know, you still, I would think, have an ex post facto argument because no one disputes that the MVRA was not in existence at the time he committed the crime. Correct. We all agree that the statute that is being applied retroactively is the MVRA. Is the MVRA. Correct. We couldn't make an argument that the VWPA was applied retroactively. That was in effect at the time of the offense in this case. And, of course, you would win if you did because then he couldn't be held to the very provision that you are trying to get nullified. That is the argument that we will make on remand if we end up on remand. I think the government takes a different position on that issue. They think that the MVRA liability period provision can apply even if the restitution order was imposed under the VWPA. But that would be an issue for the Eighth Circuit to resolve on remand. Now, on the merits, I will just start by saying that it's crystal clear that restitution is part of the criminal sentence. This Court said that in Monique, and there are a number of textual indications of that fact in the statute. Starting with Section 3556, which is in the chapter entitled Sentences, that provision instructs courts to impose restitution in imposing a sentence on a defendant. It then points courts to 3663 for discretionary restitution and 3663A for mandatory restitution, both of which instruct courts to impose restitution when sentencing a defendant. In numerous parts of the Code, Congress used the language, a sentence of restitution. For instance, in 3611, it said a person who has been sentenced to pay a fine assessment or restitution. Sentenced to pay restitution. And it makes sense that Congress made restitution part of the sentence because it viewed restitution as a punishment that had consequences for other criminal punishments. Section 3664M allows victims to enforce restitution as a judgment lien under State law. Are you aware of any criminal punishments that victims can enforce personally? No. I think this is probably the only one. The MVRA gives victims a very limited right to enforce restitution by obtaining a lien on property within the State where the conviction was imposed. It does not give victims the full range of civil enforcement mechanisms, such as garnishment, for instance. It does give that full range of enforcement mechanisms to the attorney general. The attorney general has the same authority to collect restitution as she does to collect fines. And it's telling that Congress treated restitution just like criminal fines. Doesn't the fact that the victims can enforce the restitution order themselves cut strongly against your argument that that restitution is penal rather than looking to provide remedies for the victims? I don't think so when you look at the entirety of the statutory scheme. Again, first, the fact that it is part of the sentence. Second, that the sentence can be enforced not only through civil liens but through the defendant's freedom. This Court made that point in Pennsylvania Department of Welfare v. Davenport where it noted that restitution obligations differ from ordinary civil obligations because they are secured by the defendant's freedom. In Section 3614, Congress authorized courts to impose any term of imprisonment that may have originally been imposed as a resentence in cases where defendants fail to pay both restitution and criminal fines. Is there any reason you can't have a civil proceeding running parallel to the criminal proceeding? You know, the state has an agency to allocate fault in the case of auto accidents, you know, and whoever has to pay. You know, when somebody steals a car and, you know, crashes the car and he's criminally prosecuted for that and in the same accident just has to go through a civil process where he may also be assessed a fine. Is there anything wrong with that? No, I think Congress could have chosen to do something like that. Now, depending on how it was structured, that may raise some serious problems under the Seventh Amendment. But putting the Seventh Amendment consequences of such a scheme aside, Congress might have created such a system. But that's not what it did here. Could it just say we intend this to be civil and have the operations of the statute operate in the same way and then we would say it's civil? In other words, it seems odd that so much turns on the label as opposed to the operations of how the statute works. Well, I think if Congress perhaps just said the word civil but did everything exactly the same, we would still be before you arguing that that is quintessential criminal punishment. But this Court has said that the inquiry at the first step of the criminal punishment Quintessential why? If it's payment to the victim, just like a tort suit. I know some of the folks have characterized this as just a tort suit-like. Sure. I think if it's still part of the sentence that is imposed by the sentencing court as part of the sentence, together with imprisonment, fines, probation, all of the other criminal punishments, I think our position would still be that is criminal punishment. But Congress could have written a different statute that would have accomplished something civil, again, wrestling with the Seventh Amendment consequences of that. The Seventh Amendment is, I think, important here because it is part of the backdrop against which Congress legislated in the MVRA. In the wake of the VWPA, which was the predecessor to the MVRA, the courts of appeals uniformly rejected Seventh Amendment challenges to restitution on the ground that restitution is criminal punishment. This Court commented on that uniform consensus in Kelly v. Robinson before Congress enacted the MVRA. This Court also construed the VWPA in Huey before the MVRA and applied lenity to the VWPA as a criminal statute. All of that is part of the backdrop against which Congress enacted the MVRA. And not only did Congress not do anything to signal it was intending to depart from that consensus, but it carried forward the same operative language from Section 3663 in the VWPA. And in its legislative history, it didn't seem as though Congress was pretty clear that this was not just about compensating the victims. I mean, I see here a quote that Congress says that the MVRA is, quote, needed to ensure that the loss to crime victims is recognized and that they receive the restitution that they are due. It is also necessary to ensure that the offender realizes the damage caused by the offense and pays the debt owed to the victim as well as society. So it seems as though, at a minimum, Congress was doing more than just saying the victim has to be compensated. And if that's the case, why is it characterized as a criminal statute if there are two motives operating? Sure. May I answer? Please. So to take those questions in two parts. First, absolutely, Congress made crystal clear in the legislative history that it thought the MVRA was a criminal statute. If you read the Senate Judiciary Committee report, it uses the word criminal more than 40 times, and the only time it uses the word civil is to distinguish restitution from civil proceedings. Now, to take the second part of Your Honor's question, the inquiry that this Court has adopted for when is something criminal punishment just asks whether Congress intended to create criminal punishment. And whether it has some other purpose, such as here compensation, such as in the case of imprisonment, protecting the public, doesn't matter because all punishments serve more than one purpose. Thank you. Thank you. Justice Thomas? Justice Alito? What will be left of Smith if we rule in your favor? Suppose that a state sex offender law provided that the sentencing judge would determine how long an offender needed to register, or suppose that the state could summarily revoke probation if a defendant failed to maintain his registration. Would that mean that the sex offender law would be penal? Not necessarily, Your Honor. We don't think there's any inconsistency between a holding in our favor here and Smith. In Smith, the requirement to register as a sex offender was not imposed as part of the sentence. The legislature used the sentencing process simply to notify the offender of the need to register, but it was not imposed as a punishment. There is a distinction between the sentence itself and conditions of release or probation. Those are conditions on the sentence but are not the sentence itself. So we don't think that a condition of release, such as the obligation to register as a sex offender, would necessarily amount to criminal punishment in the same way that conditions of imprisonment, like cell phone restrictions, are not themselves punishment. Would you say that the primary function of restitution under this statute, the statute you would like us to apply, is penal or civil? The primary function, is the primary function to punish, or is the primary function to provide compensation to make victims whole to the extent possible? Which is primary? The court in Paroline said the primary purpose is compensation, but we think the penal purpose here is just as important and primary, I would say, as the compensatory purpose. Justice Sotomayor? Under the statute, drug offenses order restitution to the society, don't they? Yes. So that's why you're saying it's equal? Yes, that's a very good indication that Congress was intending to do more than simply compensate individual victims. Number two, our ex post facto jurisprudence has three components. Was it being applied to previous conduct? The first is the question before us, is it criminal or civil? But that there's a third component, does it increase punishment? On that question, there's a circuit split, and we didn't grant cert on that, correct? That's correct. So this, at worst, would be a reverse rebate? Yes, we agree with that, and I think the government does as well. Thank you. Justice Kagan? What about these provisions that say that, on the one hand, the award is offset by any civil judgment received, and on the other hand, that the victim can keep coming in, you know, however many years later, to offer proof of further damages? That really, both of those seem very odd if the statute is primarily punitive. Sure. So as to the first one, we think that feature of the scheme supports us as a matter of statutory construction, because those provisions, which are in 3664J and L, distinguish between what happens at sentencing, at the imposition of restitution, and what happens in a subsequent civil proceeding. And the fact that Congress used the word civil proceeding and those particular provisions, we think makes quite clear that it understood that what is happening at sentencing, when restitution is imposed, is not a civil proceeding. Now, as to the second point, the fact that victims can come back at future points, first, that is cabined by a good cause requirement. There needs to be some reason why that was not presented to the sentencing court at the time of sentencing. But putting that aside, we think that one particular feature of the statute, similar to the narrow opportunity to obtain a civil lien, just doesn't overcome all of the indications that Congress understood it was imposing a sentence. Thank you. Justice Gorsuch? Justice Kavanaugh? Justice Barrett? Justice Jackson? Thank you, Counsel. Thank you. Ms. Robertson? Mr. Chief Justice, and may it please the Court, Congress implemented restitution under the Mandatory Victims Restitution Act as criminal punishment. The text makes plain, first, that restitution is punishment. In the statute's terms, it is a penalty or sanction. And, Justice DeLito, to your question, that fact alone distinguishes restitution in this case from the registration requirements that issue in Smith v. Doe, which this Court held wasn't punishment at all. Then the Court has to consider whether this is criminal or civil punishment, and we think the text is equally plain that it is criminal. Restitution is imposed for a criminal offense on a criminal defendant at criminal sentencing where the United States stands as the adversarial party. And if there were any doubt, the statutory history dispels it. The Court of Appeals had uniformly held that restitution under a predecessor statute was criminal punishment, and Congress replicated the relevant language in the MVRA and doubled down on features indicating a punitive intent. This Court should vacate so the Court of Appeals can consider in the first instance the United States' alternative arguments for affirmance. I welcome the Court's questions. Does it make a difference if this sanction was imposed in a separate proceeding? Does it make a difference if it had been imposed outside of the sentencing context? Well, I don't think it would change the nature of restitution as punishment given that Congress refers to it as a penalty, but it might change whether we conceive of it as a civil penalty like the administrative penalties at issue in Hudson or in Ward or whether we consider it a criminal punishment. The fact that this penalty is imposed in a criminal proceeding is one strong indication that it is meant to serve as criminal punishment. Do you think that all sanctions imposed in criminal proceedings are in fact penal or criminal? So I think this is an important distinction, Justice Thomas, and I want to be clear that we do distinguish between what is part of a criminal sentence and what occurs at criminal sentencing because we agree with amicus that not everything that occurs in criminal sentencing or even that appears in a criminal judgment is necessarily part of the punishment and therefore part of the criminal defendant's sentence. So the classic example here would be the registration requirements at issue at Smith v. Doe because those requirements were announced at sentencing. They even appeared in a judgment, but that didn't make them part of the sentence because they weren't meant to add to the defendant's punishment at all. So here it is quite important to our analysis that Congress has specified that restitution itself is meant to serve as a penalty or a sanction. And that is a point that we would hope that the Court would be clear on in its analysis because we do think that there are things that might come up at criminal sentencing, including conditions of supervised release, that we wouldn't conceive of as punishment at all. So we do think that when the Court engages in the statutory construction here, it is paramount to us that Congress labeled this as a penalty or a sanction. And we think that that really washes away many of amicus' arguments about the non-punitive purposes that restitution might serve because, of course, we agree that restitution can serve important compensatory goals. But when Congress has told us expressly that it intends restitution to be punitive, it intends it to be a penalty, that answers the question as a matter of statutory construction. So just to summarize, what should we say, in your view, in the opinion to prevent spillover effect that you're concerned about? What are the key components? So we think there would be two important points for the Court to make in the opinion. First is to be clear that it is resolving this as a matter of statutory construction under Step 1, not under Step 2 of the Mendoza-Martinez test because we do think restitution is the type of penalty that can be implemented as either criminal or civil. And Congress and state legislatures have chosen, in some circumstances, to implement restitution as a civil penalty. So we think a decision that makes clear that the Court is resting on a matter of statutory construction under the MVRA will leave appropriate room for legislatures in future cases to treat restitution as civil. When it comes to statutory interpretation, we think it's important that the Court not single out any one particular feature that makes restitution a criminal punishment. Rather, we think it's important both that the text is plain that it is punishment. As I said, it's referred to as a penalty. Elsewhere, it's referred to as a sanction. Elsewhere, the text refers to defendants who are sentenced to restitution or a sentence of restitution. And then, when it comes to the question of whether it's a criminal punishment, it's important to us that all the textual clues here point in the same direction, and that includes that restitution is predicated on a criminal conviction, that it's imposed personally against the criminal defendant, that it occurs at criminal sentencing, that for misdemeanor offenses, it's the only punishment a defendant might receive, that it's the United States that is the adversarial party that can enforce restitution and the obligation to impose restitution in the first instance, and then exercises the primary authority on the back end. And then, on top of all that, that restitution is codified within the criminal code.  So if I can paraphrase, Ms. Robertson, your suggestion to us is that we throw in absolutely everything so that in some future case, we will be sure to have some sort of distinction. I think our test here is consistent with any ordinary principle of statutory construction, which is we don't want to suggest there are hard and fast rules here. And, yes, we do think — Say yes. You can just say yes. We do think it's important to rely on all the textual clues. Well, what about the prior statute? Was that punitive to — Yes, we do think that restitution under the VWPA was criminal punishment. The government took that position when it was — The purpose of this is to help victims. The reason that the government took the position when this question was litigated, that the VWPA was criminal punishment, is because that statute uses similar language to the one at issue here. It does refer to restitution as a penalty. There was also plenty of statements within the legislative history there that Congress intended for a logical purpose. Well, legislative history. Legislative history. In the statute itself, Congress lamented that the criminal justice system had ignored the physical, psychological, and financial hardship of victims, found that the criminal justice system focused only on identifying and punishing offenders. As a consequence, victims had lost valuable property to the criminal. Congress enacted that act with the stated purpose of ensuring that the Federal Government does all that is possible within limits of available resources to assist victims. If this is — if this turns on congressional intent, how much clearer could congressional intent be than that, right in the statute itself? We would draw a line between whether Congress intends something to be punishment and the purposes that a particular punishment might serve. It's not unusual, for instance, for criminal fines to serve a compensatory purpose. By statute, most criminal fines are obligated to the Crime Victims Fund. So we do think that a punishment can serve a compensatory purpose, but there's still the threshold question of whether Congress intended to implement the measure as a punishment. And for purposes of this — Well, I thought the question was congressional intent. If Congress says our intent is to assist victims, isn't that open and shut then? Well, we think the fact that Congress refers to restitution as a penalty is similar to saying restitution is punishment. And there's no plainer statement of intent than that from the text. But for purposes of this case, I think it is important that whatever questions might have existed about the VWPA when it was first enacted, the courts of appeals uniformly treated VWPA as criminal punishment. That's the consensus that this Court observed in Kelly. Congress was legislating against that backdrop. Well, maybe that's — maybe they were right, maybe they weren't. Maybe they, like possibly you, are worried about the consequences of saying that it's not, that it's not penal. But then you have the VWPA followed by the MVRA, the mandatory victims, talks expressly about victims. Doesn't that show what Congress is getting at? Again, we don't want to gainsay the important role that victims play in Congress's motivation here. But just as to the threshold question, we do think Congress's intent to implement criminal punishment is clear. And as to the consequences, there is a real consequence to treating restitution under the MVRA as a civil penalty, and that's the concerns that it would implicate the Seventh Amendment. We think that was the concern. Ms. Robertson. Ms. Robertson, I just wanted to ask you analytically, and, you know, I'll show my cards and say it's just because of thinking about this Digg argument. Do you think analytically we should be thinking about these as two distinct statutes, or should we be thinking about the VWPA and the MVRA as just different amendments to the same basic statute? We think that you can think today of both Section 3663 and 3663A as part of the MVRA because restitution imposed under either scheme would be subject to all of the MVRA's many provisions, including its collection authorities, its procedural safeguards, and all of those provisions are relevant to the Court's analysis. But to be direct about the Digg, if the Court wants to identify the provision at issue here, we do think it should take the case on the premise that it's Section 3663A. That was the government's position before the Court of Appeals. The Court of Appeals accepted that premise. Petitioners no longer disputing it or asking this Court to revisit that factual predicate. And so we think it's appropriate for the Court to resolve this case on the same basis that we asked the Eighth Circuit to rule in our favor below. And that section was not in effect when he committed the crime, correct? That's correct. So that's the source of the ex post facto problem. No matter what happened at sentencing, at the time he committed the crime, 3663A was not in effect, and today he's being held to account under that provision. That's correct, Justice Jackson. I would make one clarification. The MURA by its terms applied to petitioners. So if the district court didn't apply 3663A, it could have only done so if it determined that that provision was criminal punishment, the very question at issue here. Now there would be a separate question as to whether the limitations period that the government is currently attempting to apply to petitioner might constitutionally apply. It's our position that it could, even though his restitution obligation was criminal punishment, because we don't think increasing the time to collect restitution increases his punishment. That's the argument you want to preserve. But that's the argument we're trying to preserve for remand. Can I just go back to Justice Alito's colloquy with you? Because I guess I'm still wondering whether your argument flows from the idea that there might be different purposes of punishment, and that you could have a punitive measure that is imposed for rehabilitative circumstances. And with an idea that you are making this person pay back society, you're making this person make amends for what it is that he's done. But it really is still a part of the punishment in the way that theorists have traditionally understood various purposes of punishment. We think that's right. And this Court made a similar observation in Kelly itself, where it said that restitution serves as a particularly effective rehabilitative penalty precisely because it forces the offender to confront in concrete terms the harms that his actions have caused to a real person more than a fine, which is paid to an abstract entity like the state, would. It also serves a particularly effective deterrent purpose for that reason by facing with the harm that he's caused. So even if it's victim-focused, it can still be punitive in this way? Yes, absolutely. And we do think that this punishment here serves penological goals as well as compensatory ones. Thank you. With respect to our opinion, if we rule in your favor, you also want to say something about the Sixth Amendment or to avoid saying anything problematic about the Sixth Amendment, correct? What do you suggest? We think that the cleanest way to resolve this case when it comes to constitutional avoidance is to recognize that constitutional avoidance only comes into play where, after exhausting all the ordinary tools of construction, the court is left with competing interpretations that are plausible and one would avoid constitutional concerns. Here, we don't think that there are competing plausible constructions. We think that Congress's intent is unambiguous. We also don't think that there's a construction that would avoid constitutional concerns because calling restitution a civil penalty would raise seven amendments. You might be referring to the Seventh Amendment. Yes. My question was about your footnote about the Sixth Amendment. Right. So we don't think that the court would only need to address the Sixth Amendment if there were a legitimate claim to be made for constitutional avoidance, and we simply think that there's no legitimate claim here because there are constitutional concerns on either side. Of course, even if the court agrees with us that restitution is criminal punishment, we have alternative arguments for why restitution wouldn't implicate this Court's decision in Apprendi, which we would continue to make. Right. That's what I was getting at. Justice Thomas, anything further? Justice Alito? Senator Minowa? Justice Kagan? Justice Gorsuch? Even if this were civil, civil retroactivity is not something that we countenance without a clear statement, right? So we think that the court has been clear that the ex post facto clause itself only applies to criminal punishment. Right. You disagree with Professor Logan on that.  Yes, we do. We do disagree on that point. We take the case as… But we do, Landgraf, in other cases, civil retroactivity is something that's antithetical to basic rule of law notions, at least without, in many instances, not always, not always, but Landgraf says that too, right? So we agree that it would be unusual for Congress to apply either a civil or criminal penalty retroactively without, of course, a clear statement that it intends to do so. We have that here. Congress clearly intended to apply the MVRA retroactively to the extent constitutionally permissible, and it's important to us that many of the MVRA's provisions can apply retroactively even though it's criminal punishment because not all of the MVRA's provisions increase that punishment. Thank you. Justice Jackson? Thank you, counsel. Thank you. Mr. Bash? Thank you, Mr. Chief Justice, and may it please the Court. I'll take the Digg argument I make first, and then I'll move on to the merits. To clarify the Digg argument, and this goes to questions from Justice Thomas, Justice Jackson, and Justice Barrett, it's not only that at the time of sentencing the judgment form said the old statute. The position of the Solicitor General at the time, consistent with the proviso in the statute that said only apply this retroactively to the extent you believe constitutionally permissible, was not to apply the statute in cases like this. The district court found in this proceeding that the sentencing court did not apply the statute on which the question was presented in this case. The court of appeals did not disrupt that finding as far as I can see, and I don't think it would matter if it did. But at page 4A of the PEDAP, the court of appeals says the MVRA is being applied retroactively in this case, but what it meant by that was the 20-year extension provision. But, Justice Jackson, whether that would be an ex post facto problem turns entirely on what it's extending. So if that provision applied to something that, let's say, this Court had already determined was a civil penalty, the mere fact that it's contained in the same statute as a restitution obligation that is assertedly criminal would not make the application of the 20-year provision to the civil penalty into criminal punishment. So I do think, Justice Thomas, that the Court has to decide what was applied in this case, because the question presented relates only to the second statute, not the first statute. And, Justice Barrett, this is in a context in which, as Justice Kavanaugh noted, congressional intent is one of the key considerations, and the intent behind the 82 statute may have been very different than the intent behind the 96 statute. And just to respond to one more point on this, I think I heard the government say that, well, even if it applied the other statute, it's all part of the same statute now. But remember, what the sentencing court likely did, consistent with the Solicitor General's position, was apply the pre-MVRA version of the VWPA. So it's not as if it applied the amended version, which maybe that would present a closer question on the dig. It applied the pre-MVRA version. I see my yellow light, so I'm happy to take the questions from the Court, Mr. Chief Justice. But the considerations between the two different statutes would, on a higher level of generality, be about the same, wouldn't they? I mean, there's not that much difference. And we're not dealing with the increase in time that expands at this level. So what difference would it make? Justice Thomas, I do think there are some pretty critical differences between the statute. The two statutes, although my ultimate position would be that neither are punitive. But one big difference is that, especially under the earlier version of the VWPA, the sentencing court could not only decide whether to enter restitution award, but decide the amount based on ordinary pedagogical considerations, culpability, the defendant's circumstances, whether the defendant has dependents and so forth. That is prototypical of the criminal justice system, which focuses a lot on the defendant. The MVRA is totally different. The MVRA is a pure compensation regime that parallels the tort system. It does not care about the defendant's culpability. It does not care if the defendant has dependents. It's full restitution. That is characteristic of the civil tort system. And so I do think there are differences. The legislative history is very different. The MVRA is way more focused on victim compensation than is the legislative history of the VWPA. Would it have made a difference had there been a separate proceeding that looked more like a civil proceeding than doing this at the sentencing stage? I think that would make it an easier case, but I don't think the outcome should turn on it. So let me just put it this way. Virtually every feature of this statute, it's full restitution, no less, no more. There's offsets for civil judgments. The victim can continue to petition indefinitely for further compensation, for example, for medical bills that continue to arise in old age based on an  It can be enforced through a civil lien. Even when the attorney general enforces it, he or she enforces it in the manner of a civil judgment. The defendant has to notify the victim when his or her ability to pay changes. All of those are clearly features of a civil compensatory system. Now, I think if that was set up with a different case number, where what could take advantage of the collateral estoppel effect of the criminal judgment and just do everything exactly the same, but it had a different case number on it, I think there would be no question that the Court would consider it a nonpunitive remedy. So I think the question before the Court is, if Congress chose, for what I think are pretty obvious efficiency reasons, to fold that compensatory remedy into criminal sentencing, does that make it punitive? Here's why I think the answer to that question is no. When this Court has in the past looked at the nature of the proceedings to answer this question, and those were invariably cases in which the proceedings were civil and so the Court said the remedy was civil, there was really no other explanation for why Congress chose that form of proceeding than that it intended the remedy to be civil in nature. That's not true here. Here there's a preexisting criminal proceeding that will happen no matter if there's restitution or not in order to impose a criminal judgment and imprisonment and so forth. And there's a perfectly plausible and I think likely explanation for why Congress folded this compensatory remedy into this proceeding, which is way more efficient to get victims the compensation they need to do it all at once. But your argument just seems to beg the question, right? The question is whether Congress intended this to be a compensatory remedy. We're not sort of asking, well, why did Congress put this compensatory remedy here? We're asking, is this compensatory, meaning civil, or not? And I guess I feel like you're struggling a little bit against the weight of all of the consensus that existed with regard to the VWPA, the preexisting statute that this statute was amending everybody thought was criminal. It was all over the legislative history. It was in the statute. It was no one questioned it. And so I guess I'm asking you, is there some kind of indication that Congress was intending to shift or depart from that well-established understanding when it enacted this statute that was just amending the prior one? There are substantial indications, Justice Jackson, and here they are. I'd start with the structure of the statute. Under the VWPA, as it existed when those courts of appeals decisions were rendered, the sentencing court could take into account culpability, deterrence, just punishment, the circumstances of the defendant and his or her dependents in deciding not only whether to impose restitution, but in calibrating the amount in that respect.  So they made it mandatory. You don't get to take those things into account. But why does that mean that it becomes less criminal? Because that is the prototypical characteristic of the civil tort system. When you sue somebody for injuring you or defrauding you, and the jury says, yes, they did it, and now we need to award damages, the jury cannot take into account, well, I think this person is going to reform themselves. This was their first offense. The jury cannot take into account this defendant has dependents, and we want to calibrate this. None of that's relevant. The characteristic of the civil tort system is the same as the MVRA, full compensation and no more. So that is why there's a huge difference between the MVRA and both the VWPA and the state system that this Court considered in Kelly. Can I just offer you a syllogism that I think makes the point especially clear? Sure. So two propositions, both from this Court's case law. One, in a lot of cases, going back to Halvorin v. Mitchell in 38 and Marcus v. Hess in 43, this Court has said that when a remedy is compensatory, it is not punitive. And even treble damages provisions, the Court said, well, that's a rough form of liquidated damages. I'm sorry. Was this in criminal cases or are these civil cases? I'm not familiar. These were cases deciding that a remedy was not punitive, I think, in the double jeopardy context. But in the context of a civil action? These were civil actions, that's true. Okay. That's true. That is a distinction here, and I can address that in a second. But this Court — I mean, isn't that relevant? We're in the context of a criminal proceeding, and the court, the sentencing court, is imposing this as part of the punishment. It's relevant. But as I said to Justice Thomas a few moments ago, I think the nature of the proceedings has been relevant when it gives rise to an unavoidable inference about what Congress intended, but it's very different here where those proceedings would happen either way, and there's an obvious efficiency route. What do you do with the legislative history for the MVRA where Congress says it is needed to ensure that the loss to crime victims is recognized and that they receive the restitution they are due? It is also necessary to ensure that the offender realizes the damage caused by the offense and pays the debt owed to the victim as well as society. That second sentence sounds very rehabilitative to me, which is a purpose of punishment. And that's exactly the second part of the syllogism I wanted to get to. In 89 Firearms, one of this Court's cases in this area, the Court said that the inquiry is rather the remedy is more remedial than punitive. In both Paroline, which is one of my opponent's favorite cases, and Dolan, this Court said the primary purpose of restitution is remedial. If you put those two things together, if the question is whether it's more remedial than punitive, and this got to a lot of the questions that Justice Alito was asking to my friends on the other side, clearly this compensatory tort-like system is more remedial than punitive. It's designed to get victims' compensation. The last thing I'd say about that, Justice Jackson, is this Court has repeatedly recognized that virtually any monetary exaction or other sanction, whether civil or not, has a deterrent effect, just like the tort system has a deterrent effect. When you get a — I'm sorry, Justice Gorsuch. No, no, please finish your — I mean, just like the tort system has a deterrent effect. That's a big purpose of the tort system, is to deter tort-feasers from doing torts. But that doesn't make it punitive. And so if the only deterrent effect that arises from a monetary exaction is the deterrent effect that any form of compensation would have on the relevant behavior, then that's not enough to shift the balance from remedial to punitive. Justice Gorsuch, I'm sorry. I just wanted to give you an alternative hypothesis about the shift between the VWPA and the MVRA going from more discretionary amounts to a mandatory amount. Could Congress have thought, yeah, this is punishment for sure. It's punishment for all the reasons your friends on the other side say and all the courts of appeals concluded with respect to the VWPA. But district courts are simply not exercising their discretion appropriately, and we're going to take that discretion away, in much the same way that sometimes Congress takes discretion in sentencing prison terms away and creates mandatory minimums. Thoughts? Well, I think it's conceivable that Congress could have had that intent, but at least in terms of the legislative history of the MVRA, nothing like that is shown. What's shown — How about the MVRA? Isn't it pretty clear that's — that was what was going on? I think what's — in the MVRA? Yeah. Congress thought that discretion needed to be taken — more discretion had to be taken away. Oh, no, Justice Gorsuch. I think what Congress looked at was an epidemic of hospitalizations and fraud, wiping out people's life savings, and it being too hard for victims to get the compensation they needed.  All right. And that — and that the awards were not appropriate and they needed to be more severe. Well, you know, they needed to be more compensatory. Okay. And as I said, in cases like Marcus v. Hess and Halvorin v. Mitchell, the compensatory nature of a remedy has been the lodestar for rendering it non-punitive. But it could be more compensatory or it could be more punitive, couldn't it? Well, again, I go back to this Court's precedents. This Court has said that compensatory remedies, even treble damages that operate — I understand that in the civil context, but I am asking you to spot a lot, and I'm asking you to spot that, you know, the circuits were not completely crazy in thinking that the VWPA was punitive. And if that's true, then maybe that's really the source of our disagreement, or at least in this colloquy. I understand the intuition, Justice Gorsuch, that, well, when you make something mandatory, doesn't that make it more severe and so more punitive? Thank you, Mr. Bash. You stated my question better than I did. But I don't think that ultimately holds up because it is the tort system that is a mandatory compensation regime. It is the civil justice system that is a mandatory compensation regime. It was compensatory in both cases before, just an insufficient one, and Congress made it more punitive, more compensatory. It really wasn't. It was capped at compensation, but it empowered judges to say, how do I impose an appropriate punishment on this person by calibrating the amount of restitution in connection with all the other things I'm going to impose at sentencing? So it was really more of a criminal system. I understand your point. As I understand your argument, Mr. Bash, you're saying, well, look, this is compensatory. Here are all the ways we can see that it's compensatory. But I think the opposite argument is that just doesn't get you home because a compensatory system can have punitive – it can be part of a punishment scheme. And, indeed, there's a theory behind this, right, which is you're forcing the defendant to confront the nature and the extent of the harm that he's committed, and that is a powerful way of driving home his wrongdoing. So, you know, to say it's compensation, it's compensation, it's like, okay, it's compensation, but compensation can be a form of punishment. Well, Justice Kagan, I don't think we need the rule as broad as all forms of compensation are not punishment. I think that would be open to the court and consistent with its precedents, but I don't think you need to do that. I think you can distinguish the VWPA and the statutes like the one at issue in Kelly that say in imposing a compensatory remedy, don't just look at victim loss. Look at what's best for this defendant, what's going to promote the purposes of criminal punishment and deterrence and so forth. But when you have a regime that's essentially just a mechanical compensatory regime, I think under this Court's precedents like Marcus and Halvorin v. Mitchell, that's nonpunitive. And I go back to the ----  I guess I'm wondering why. If the whole idea of the theory is that it's punishment when you force the defendant to confront the extent of his wrongdoing, what better way to do that than to make the restitution scheme entirely focus on the defendant's loss? Well, Justice Kagan, let me try it this way. I mean, 3664L allows victims to take advantage of the collateral estoppel effect of the criminal judgment in bringing a separate civil suit. So you can imagine a system where the victim ---- it works exactly the same way as it does here. But the victim just goes under a different case number, maybe even the attorney general initiates it or maybe not, and just invokes the collateral estoppel effect of the judgment, and everything's the same. It's a compensatory remedy. It's offset by civil judgments, all the same features here that are laser-focused on compensation. I think it would be pretty clear that that's a typical civil compensatory statute. And so the question is, does the fact that Congress arguably, and I think it's only arguably, made this part of the sentence or part of sentencing proceedings change things? And I think the government has to admit that that can't be the line because a lot of civil things are imposed at sentencing through conditions of supervised release. This Court hasn't decided that question before, but lower courts have almost uniformly said that DNA testing is your next prospective challenge. It's drug testing, you know, consent to certain forms of searches. Those are all civil things imposed at sentencing because they serve nonpunitive goals. In those cases, it's preventing reoffense or reintegration to society. In this case, it's compensating for harm in a way that I think is materially indistinguishable from what the tort system could provide. But in the tort system, if the victims receive insurance or some other form of compensation, then you wouldn't have the ability to get the complete relief in the context of the proceeding. I'm not aware here of restitution being offset by other forms of relief received by the victim. It is, Justice Jackson. It is. Yes. Under 3664, there's two ways it happens. One, once there's a restitution award and the victim gets a civil judgment for the same harm, it's got to be reduced. So that's civil judgment.  Right. But insurance. Insurance, it's not taken into account in the computation of the award. But then the judge can order that that portion of the restitution award go to the insurance company or the other source that either paid it or has an obligation to pay. And the only limit on that is they got to get paid last after all the victims get paid. But it actually is offset. I mean, I think the argument against you would go back to the way that Ms. Kavanaugh's question, where when Justice Kavanaugh said, what do you want? And Ms. Robertson, you know, listed about 42 different ways in which Congress said that this was criminal punishment. And then you're here to say, yes, but look at this intense focus on the victim's loss. And in the context of those 42 different ways, you're asking us to say, well, the fact that they focused on the victim's loss takes us out of the criminal punishment box. And I guess what I'm suggesting is that, no, in that context, it's fully consistent with the rest of everything that they did. It's like, yes, it's focused on the victim's loss, but that doesn't make it any less criminal punishment. I hate to attack the premise of the question, but I don't think there are 42 different ways. Most of the things that my colleagues said I don't think are persuasive at all. So the thing I kept hearing was that they denoted it a penalty. But this Court said in 89 firearms that penalties can be either civil or criminal. We've given a ton of examples throughout the U.S. Code where penalty is used in the civil sense or the criminal sense. Sanction is the same way. And, in fact, in one of the provisions my friend relies on, the government relies on, 3551, Congress said the sentence is the fine, the imprisonment, and the probation, and the sanction is forfeiture and restitution. Now, there are other provisions they can point to that suggest it's a sentence. I think, in reality, Congress was of two minds on this at different points and probably never formed a judgment about whether it is, in theory, part of the  But even if I accepted that it was part of the sentence, I think that just goes back to the point I made before, which is, can Congress fold a clearly remedial compensatory remedy into a sentence for efficiency's sake without either triggering step one of Mendoza-Martinez by signaling an intent that it be punishment or making it have to be punishment at step two, which the government doesn't even argue. So I don't think there are 42 different ways. I think this is overwhelmingly compensatory on almost every metric. And I'm sorry, Justice Alito, I'd look at your Mendoza question. No, I was going to ask something different, but I'll go ahead since there's silence. The government wants to sail between the scylla of the Sixth Amendment and the corridors of the Seventh Amendment. And it seems to think that it can escape the Seventh Amendment by listing 42 things that would be inapplicable in any other situation. But either of those would destroy this regime, probably. So why should — which one is more dangerous? The Sixth Amendment is by far more dangerous. Let me give you a quick pitch on the dig, though, for that, which is that this is the lurking issue that actually really matters here, and the parties have barely briefed it. The actual question presented is vanishingly unimportant for people who were — committed the crime before April 1996, were convicted after. For some reason, the court applied the MVRA even though the government was saying to apply the VWPA, and they still have an outstanding award. So the actual QP is not very important. As you say, though, the jury trial question could destroy the whole regime. So under the Sixth Amendment, the Apprendi Rule, as elaborated on in Southern Union, says any fact necessary to increase the maximum monetary award — I'm going to sub in monetary award, but the court has applied that to fines — requires a jury trial. Lower courts have said in this context that, well, the conviction authorizes the maximum unlimited amount of restitution. As Justice Gorsuch pointed out in a separate opinion in Hester, I mean, that just does not follow logically. Under 3664E, the court has — Thank you, Mr. Bash. Under 3664E, the court has to find by a preponderance of the evidence that particular items of loss have been proved. Clearly, that's fact-finding. There's a — for any nonzero amount of restitution, the Apprendi Rule would obviously require a jury trial. Of course, the court could always draw exceptions to it. Justice Alito, in the same case, he suggested maybe just kind of drawing a line there, but the Apprendi Rule clearly applies under the Sixth Amendment. The Seventh Amendment is much closer to me. So the — for — you know, on the original understanding of the Seventh Amendment and its plain text, it says suits at common law. So I think pretty clearly this is not a suit at common law. It's a statutory restitution proceeding. Of course, this Court's case is — Well, this Court has said, Mr. Bash, as you are well aware, maybe about to say — I'm not going to stop there, Justice Gorsuch.  I got more riffs on that to go. I'm sure you do. I know. So — But the Court has said, you know, labels don't matter. And if it's in substance a civil trial for restitution, that would have been a suit at common law. Surely. Wouldn't you agree? So what this Court has said is that statutory causes of action that mimic common law causes of action, both in substance and in remedy, meaning the beacon, theaters, damages, equitable distinction, trigger the Seventh Amendment right. So let's just accept that the Court would not reconsider that. This is not quite a statutory cause of action. It is sort of an unusual proceeding, although the one that had a history behind it at common law, as I think your opinion pointed out. But here's what I think is the important point. This Court has been much more context-dependent on whether the remedy phase of a civil trial requires a jury finding. So the two cases are Tull v. United States and Feltner v. Columbia Pictures. In Tull, the Court said, I mean, this was in a footnote, but the majority said, we see nothing in the Seventh Amendment that requires a jury trial for the remedy phase. And that was a civil penalty where it was very discretionary. In Feltner, nine years later, copyright damages, the Court said, that requires a jury trial. But part of that was based on the unique history of the Copyright Act. So all I'm saying is I think there would be historical work to do under the Seventh Amendment. The Sixth Amendment, unless this Court really drew a kind of outlier exception to Apprendi, you know, I think the Sixth Amendment case is pretty open and shut under Southern Union. Well, isn't that interesting that here you're making an argument that the government has miscalculated its own interest in choosing to take the risk with the Sixth rather than the Seventh? It does that sometimes. You know, and frankly, I think that that reason — The government's made its bed. Why should we let them lie in it, Mr. Bash? Well, there is a path-dependent reason, I think, for that, which is that the government developed this position pre-Apprendi. And so it developed this position that restitution is criminal. I'm reading between the lines. Well, it made the opposite argument in the Eighth Circuit, and here we are. It's flipped its view. Yeah. I think maybe the U.S. Attorney's Office there didn't follow the DOJ position overall. And it's admirable that the DOJ flipped its view, I want to say. I think it is admirable that they reconsidered their position. But they've made their judgment. And all I'm saying with respect to their analysis of the jury trial right is that they developed that position pre-Apprendi, I think, precisely in order to avoid the Seventh Amendment problem. The problem now is I think arguably the bigger constitutional problem is the Sixth  And, you know, I didn't hear in response to Justice Kavanaugh's question a very satisfactory explanation of what the Court would say in this opinion to avoid the Sixth Amendment problem. Thank you. But that's unavoidable. Go ahead. I'm sorry. That's unavoidable. In the civil context, at least at common law, I believe that restitution was not an equity, was it? Claim or was it a common law jury claim? So, Justice Sotomayor, this depends a little bit on shifting meanings of the word restitution. And I agree with Petitioner who points this out in her brief or his brief, counsel's brief. Restitution is a word for an equitable remedy that I think would fall on the Beacon Theater's bench trial side of the line. When you're talking about restoring something taken. And some of the remedies under restitution take that form. So if someone steals your car, restitution might have to be to return the car. I think that actually would fall on the Beacon Theater's line of you don't need a jury trial. But this is different. This is paying a monetary compensation. Some of the forms of restitution, the majority in the statute here, are really traditional damages. So really jury trials would have been required in the common law if we required them in the criminal context because it's a substitution for civil. It wouldn't be the end of the world, Counselor. It would just be taking, avoiding taking away a right to a jury trial. I don't think it would be end of the world as a practical matter. It would mean the entire statutory scheme has been unconstitutional for decades because they haven't been provided jury trials. I don't think practically it couldn't be implemented. But as I said, I think the Sixth Amendment problem is much clearer. Well, this would be a new rule because we've pretty much have established precedent to the contrary. Thank you. I do think there would be an argument under the Seventh Amendment that this could survive under the reasoning of the Court. So you're not buying their footnote three in the government's brief on the Sixth  You know, the government, I think, if I'm remembering the footnote, rehashed the Court of Appeals' views.  The judgment of conviction authorizes unlimited restitution. That is just not true. There has to be a finding of particular items of loss. That is a factual finding that you can't — without which no restitution is authorized. So it's just not correct. I don't see how that — a lot of Court of Appeals have adopted that view, but I don't think it is correct. Justice Thomas, anything further? I can't help myself. You'd agree that in the civil context in the Seventh Amendment, when you're seeking damages, you usually get a jury trial? You know, that has been — the Court so held in the copyright context in Feltner, you know, I don't know that the Court has analyzed — And here, nobody's asking for the return of the horse. They're seeking damages, right, effectively. That's your view. There's full compensation. Yeah. I don't think there's a distinction between many of the heads of loss here and legal damages. I think that's true. Okay. That's silly. The only point I was making is that under Tull and Feltner, I think there's a more rigorous analysis on whether the remedy phase of a civil jury trial, that phase of it requires a jury, because it held for civil penalties, at least, that it did not. Gotcha. That's different than damages, I know. Gotcha. Thank you. Okay. Justice — Justice Jackson? Thank you, Counsel. Thank you. Ms. Zaharia? Just — just very briefly, I'd like to respond to Justice Alito's question about the findings and purposes of the VWPA that he posed to the government. If you look at Section 2 of the VWPA, it is replete with references to the criminal justice system and the criminal justice process. Congress was intending to give victims more of a role in the criminal justice system, but there's nothing in those findings or purposes that suggests that Congress thought it was creating a civil proceeding, which is a relevant question here. Second, with respect to the Sixth Amendment and Seventh Amendment question, I'll just say the following. First, I think under the Seventh Amendment, this case is much more like Feltner than Tull because it involves compensatory damages, and what's more, the inquiries that judges make at sentencing really go to core liability-type questions of proximate causation. To determine who is a victim, the court has to determine who suffered losses proximately caused by the offense conduct. Those are the kinds of questions that, in the civil context, juries always decide. And if the court's going to pick which one is worse, well, a ruling that restitution is civil would completely upset the apple cart on the Seventh Amendment because the circuits rejected that argument uniformly on the ground that restitution is criminal punishment. In the Sixth Amendment context, the courts, again, have uniformly rejected the apprendee argument, but they've done so on two different grounds. Only a minority of courts have adopted the civil remedy ground, and all of the courts have said that it's an indeterminate range that just isn't subject to apprendee. That may or may not be correct, but that would be an issue for the court to address in some future case if it so chose. And then, finally, on the point about restitution being mandatory under the MVRA, I would adopt Justice Gorsuch's response to that, which I thought was quite — was correct, that Congress simply made the relevant judgment for sentencing courts and making restitution mandatory, and I think that the argument that restitution is civil because it's mandatory doesn't account for the way that Congress intertwined restitution with all of the other punishments imposed at sentencing. So for all those reasons, we ask the Court to vacate and remand.  Thank you, counsel. Mr. Bash, this Court appointed you to brief and argue this case as an amicus curiae in support of the judgment below. You have ably discharged that responsibility, for which we are grateful. The case is submitted.